CHRISTINA J. MOSER
(S.B.N. 199027)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.861.7818
Email: cmoser@bakerlaw.com

*Attorney for Plaintiff, Summit Tool Company d/b/a Ken-Tool*

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Summit Tool Company d/b/a Ken-Tool,<br>Plaintiff,<br>v.<br>Vevor Corporation, et al.,<br>Defendants. | CASE NO.: 2:22-cv-02161-SK<br>*Honorable André Birotte Jr*<br>**REPLY IN SUPPORT OF MOTION TO ENFORCE CONSENT JUDGMENT; FOR CIVIL CONTEMPT; AND FOR SUPPLEMENTAL DAMAGES**<br>Hearing Date: August 21, 2026<br>Time: 10:00 A.M.<br>Courtroom: 7B<br>Judge: Hon. André Birotte Jr |

## I. INTRODUCTION

Non-Party Vevor Technology, LLC ("Vevor Technology") appears in this litigation to protest the enforcement of a consent judgment entered into by and amongst Plaintiff Summit Tool Company d/b/a Ken-Tool ("Ken-Tool") and Defendants Vevor Corporation, Wildfiore Ltd, Shanghai Sishun E-commerce Co., Ltd, Shanghai SiShun Machinery Equipment Co., Ltd, Sanven Corporation, and Rubao Jiao (collectively, "Defendants" or "Vevor").

As a non-party, Vevor Technology is either bound by the Consent Judgment as an affiliate of the original Defendants, including its stipulation as to the validity of the Product Design, or it is not bound and, thus, not the subject of this Motion to



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Enforce. At the very least, the failure of the Defendants themselves to respond warrants entry of judgment as to those parties.

## II. ARGUMENT

### A. Vevor Technology Is Subject to the Consent Judgment

Vevor Technology does not elucidate the opaque corporate structure of the entities currently doing business in the United States as "Vevor." Indeed, this reluctance to clearly identify responsible parties is the reason why the list of defendants in the original litigation was so comprehensive and required alternative service of process until an attorney contacted Ken-Tool on behalf of the Defendants, who subsequently entered into the Consent Judgment (Dkt No. 31). *See* Complaint, Dkt No. 1 at ¶¶ 3-27. While, according to Vevor Technology, some of the Defendants may no longer exist, there is no evidence indicating that the other signatories to the Consent Judgment are not still joined in the business endeavor known as "Vevor." Accordingly, there is no reason why the Motion to Enforce should not be granted and contempt entered against them.

Vevor Technology implies, but does not state, that it is one of the entities currently doing business under the VEVOR trademark, although its exact activities are not explained. Vevor Technology does not deny that it was aware of the Consent Judgment and the UPS receipt for Ken-Tool's notice letter confirms delivery to Vevor Technology on April 27, 2026.[1] *See* **Exhibit J**, UPS Receipt.

Whatever corporate shell game was used to create the new Vevor Technology entity, the company is using the same tradename and operating as a continuous entity. *See* Dkt No. 33-10, Exhibit F to Mtn to Enforce (press release); **Exhibit K**, Vevor Timeline, available at https://www.vevor.com/pages/about-us. *See Toyo Tire & Rubber*, 281 F. Supp. 3d at 982-83 (affiliate estopped from raising defense of invalidity). Vevor Technology is bound by the Consent Judgment.

[1] *See Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 980–81 (C.D. Cal. 2017) (FedEx confirmation and proof of service for contempt motion compelling evidence of actual notice despite denial by defendant).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### B. Vevor Technology's Functionality Arguments Fail

Because it is bound by the Consent Judgment, the functionality defense raised by Vevor Technology to distract the Court from the issues at hand is entirely a moot point. The defense is also meritless. For example, the U.S. patent that Vevor Technology claims limits the Product Design is based on a 1993 patent application. *See* Dkt. No. 37-3, Exhibit D to Opp., U.S. Patent No. 5,343,921. The Product Design trade dress registration certificate claims a first use date in 1955 and its application was filed in 1991. *See* Dkt. 33-4, Exhibit A to Mtn to Enforce. Therefore, whatever is covered by the patent cannot be the same trade dress design sold in interstate commerce since 1955 because the trademark application would have constituted an invalidating prior disclosure under 35 U.S.C. §§102(a) or (b) (under the pre-America Invents Act version of the Patent Act). Nothing in the patent claims that the opposing curvature of the two ends of the Product Design, the rising "s" shaped end, or the cylindrical knob are functional.[2] Vevor Technology does not identify any functionality in this specific profile.

Moreover, the fact that the Product Design application was initially rejected on functionality grounds but the applicant overcame those grounds indicates the examiner correctly determined the design was nonfunctional. For the sake of completeness, a true and correct copy of the entire prosecution history of U.S. Reg. No. 1,808,834 is attached hereto as **Exhibit I**. The prosecution history shows that the examiner initially rejected the application on two grounds: functionality and acquired distinctiveness. *See id.*, pp. 58-59. Following the final rejection by the examiner, which maintained both of those grounds (*id.*, pp. 44-45), the examiner spoke with the applicant in a telephone interview and, as a result of that discussion, the examiner allowed the application to publish (*id.*, p. 43). Accordingly, the only

[2] Vevor Technology complains that the Consent Judgment is vague as to what is covered by the Product Design. But the Consent Judgment defines the Product Design as the shape covered by U.S. Reg. No. 1,808,834, which registration includes a drawing showing the exact shape claimed in the registration. *See* Dkt No. 31.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

possible conclusion is that the examiner withdrew the functionality rejection and the design was determined to have acquired distinctiveness under Section 2(f) of the Lanham Act. While Vevor Technology implies that the concept of functionality arose after U.S. Reg. No. 1,808,834 issued, it had been well-engrained in U.S. law for decades. *See Kellogg Co. v. Nat'l Biscuit Co*., 305 U.S. 111, 119-120 (1938).

Vevor Technology's reliance on *Leatherman Tool Group, Inc. v. Cooper Industries, Inc*., 199 F.3d 1009 (9th Cir. 1999) is misplaced.[3] The Ninth Circuit was addressing a jury finding as to an unregistered product configuration, not an issued registration that is entitled to a presumption of validity. Moreover, the bounds of the trade dress proffered in *Leatherman* was entirely related to functional considerations. *Id.* at 1011. Not so here, when there is nothing functional about the specific profile being claimed.

U.S. Patent No. 5,343,921 cannot be (and is not) pertinent to a determination of functionality regarding the 1955 Product Design trade dress and the prosecution history of U.S. Reg. No. 1,808,834 shows the USPTO ultimately determined the design was non-functional.

**C. The Vevor Products Are the Same**

Vevor Technology cannot assert, in good faith, that it believed the 2026 product did not violate the Consent Judgment. Vevor Technology attempts to distinguish the product that was the subject of the 2022 Consent Judgment with the 2026 product that is the subject of this Motion to Enforce based primarily on the fact that they were made by different companies and have different SKUs. It offers vague testimony by a product manager who looked at photos of the earlier product based on Vevor Technology's records.[4] Ken-Tool, which has viewed the actual infringing

[3] The Ninth Circuit later determined that $500,000 was an appropriate punitive damages award for Leatherman's state passing off claim for its use of Leatherman's photos. *See Leatherman Tool Group v. Cooper Ind*., 285 F. 3d 1146, 1150-1151(9th Cir. 2002).

[4] The fact that these records from 2021-2022 are in the possession of Vevor Technology belies its vague claim to not be a successor company to the Defendants. *See* Dkt No. 37-1, Wang Declaration ¶¶ 8-10, Page ID#:263.

products against the genuine Ken-Tool product, disagrees and the photos of the products demonstrate that Vevor Technology is wrong: the 2021/2022 and 2026 products are identical in all material respects.[5] *See* **Exhibits G-H**, photographs. "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *See* 15 U.S.C. § 1127. Vevor Technology makes much of the different labels attached at the middle of the counterfeit Vevor products. But the Product Design does not claim the body of the tire iron, just the profile of the ends. *See* Dkt No. 33-4, Exhibit A to Mtn to Enforce. Moreover, those stickers are removable and intended to be removed. *See* Supplemental Declaration of Ben Graham, ¶ 6. The 2026 product is a counterfeit and identical in all material respects to the 2021/2022 product.

Nor is the absence of the Blue Cobra marks from the 2026 counterfeit Vevor Product relevant to whether that product infringes the Product Design. Ken-Tool's original lawsuit charged infringement by two different Vevor tire irons, one which infringed the Product Design and the other which infringed Ken-Tool's BLUE COBRA trademark and trade dress in the color blue as applied to the Blue Cobra tire iron. *See* Dkt No. 1, Complaint, ¶¶ 72, 79 (infringing Vevor products). By implying that those marks, from an entirely different product, should be found in the product at issue here, Vevor Technology confuses the issue before the Court. To the extent it is arguing that the sale of just one of two infringing products covered by the Consent Judgment is not a material violation, that interpretation would moot the entire point of the Consent Judgment.

The purpose of a contempt hearing is not to relitigate the issue of infringement:

> "In a contempt hearing, the court should not start all over again to fully analyze the new version of the mark chosen by the defendant as if it were the trial of a lawsuit against the new version." 5 J. Thomas

[5] *See Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322–23 (9th Cir. 1997) (plaintiff, "in order to establish a violation of this consent decree, need not prove a likelihood of consumer confusion in the same manner that we would require in a trademark infringement case.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> McCarthy, McCarthy on Trademarks and Unfair Competition § 30:18 (5th ed. 2017). "Rather, the court must simply determine whether the terms of the injunction were violated by the new version chosen by defendant." *Id.*; *see Wella Corp. v. Wella Graphics*, 37 F.3d 46 (2d Cir. 1994) ("The injunction ... would be of questionable value if enforcement against every alteration of the infringing mark required a relitigation" of the initial determination of trademark infringement).

*Toyo Tire & Rubber*, 281 F. Supp. 3d at, 984–85.

The 2026 product is a counterfeit and materially indistinguishable from the 2021/2022 product. No reasonable, good faith interpretation of the Consent Judgment permits sale of the 2026 product.

**D. Vevor Technology Should Be Liable for Supplemental Damages**

Vevor Technology's attempt to parse the value of the Product Design infringement based on the other infringements addressed in the Consent Judgment falls short.

Supplemental damages are appropriate for post-judgment infringement. *See Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 710 (S.D. Tex. 2013) (granting supplemental damages in Lanham Act case, analogizing "[p]atent law has recognized that awarding supplemental damages for post verdict infringement is appropriate and, indeed, required.").

Vevor Technology is a willful infringer. Beyond the admissions by its affiliates/predecessors in the Consent Judgment, it continued to sell the product after receiving notice of its infringement. *See* Exhibit J, UPS Receipt. "District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum." *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST, 2011 WL 1752091, at *5 (C.D. Cal. May 6, 2011) (awarding $1,000,000 statutory damages). Accordingly, the amount of appropriate supplemental damages is within the Court's discretion.

While Vevor Technology states "[t]he aggregate gross revenue for the period is approximately $111,500," that number does not account for what Ken-Tool would

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

have made. *See* Dkt No. 37-3 at Page ID #:265, Wang Decl. ¶ 19. The average price to consumers of Ken-Tool's T45A, product number 34645, was around $60. *See* Dkt No. 1, Complaint ¶ 41. By contrast, Vevor's price is around $40. *See* Dkt No. 33-5, Exhibit B to Mtn to Enforce at PageID#: 194. Awarding maximum statutory damages in this case would not be a windfall to Ken-Tool given the hundreds of thousands of dollars it has spent trying to enforce its trade dress rights as well as its lost sales and diverted employee time, the true cost of which is difficult to determine. *See* Dkt No. 33-3 at Page ID#:185, Declaration of Ben Graham, ¶¶4, 7.

Ken-Tool requested two million dollars in statutory damages as an appropriate amount given Vevor's history of intellectual property infringement, duty to stay clear of the Product Design trade dress following the Consent Judgment, and its admissions of prior willful infringement. "Statutory damages differ meaningfully from actual damages: while actual damages only compensate the victim, statutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). As a willful infringer involved in a commercial enterprise that infringes intellectual property as a regular business practice, two million dollars would be an appropriate deterrence amount for Vevor Technology.

## III. CONCLUSION

For the foregoing reasons, Ken-Tool respectfully request that the Court grant its Motion as against both Defendants and Vevor Technology, order payment by the Defendants of the remaining $75,000 Judgment Amount, and award supplemental statutory damages against Vevor Technology in an appropriate amount.

Dated: August 7, 2026

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Christina J. Moser*

Christina J. Moser (S.B.N. 199027)
cmoser@bakerlaw.com
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorney for Plaintiff Summit Tool Company d/b/a Ken-Tool*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**CERTIFICATE OF SERVICE**

I, Christina J. Moser hereby certify that on August 7, 2026, I caused a true and correct copy of the foregoing to be served on the Defendants below via First Class U.S. Mail, postage prepaid, and email to:

Francis H. Koh
KOH LAW FIRM, LLC
4800 Hampden Lane, Ste 200
Bethesda, Maryland 20814
fkohmail@gmail.com

Alan E. Engle
Benjamin Solter
CROSS-BORDER COUNSELOR, LLP
1115 Seal Way
Seal Beach, CA 90740
asengle@cbcounselor.com
bsolter@cbcounselor.com

*With copies via First Class U.S. Mail to each of:*

Sanven Corporation and Vevor Corporation, Wildfiore Ltd, Shanghai Sishun E-commerce Co., Ltd, Shanghai SiShun Machinery Equipment Co., Ltd, , and Rubao Jiao, in care of Sanven Corporation at:

9166 Anaheim Pl, Suite 250,
Rancho Cucamonga, California 91730

I further certify that I am a citizen of the United States and employed in Cuyahoga County, Ohio. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 127 Public Square, Ste 2000, Cleveland, Ohio 44114.

The foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment. Executed on August 7, 2026, at Cleveland, Ohio.

*/s/ Christina J. Moser*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES